Anthony DUKE, Sr. and Carolyn Duke, Plaintiffs,

v.

**CROP GROWERS INSURANCE, INC., Fireman's Fund Agribusiness, Inc., and Federal Crop Insurance Corp., a/k/a Risk Management Agency, Defendants.**

No. Civ.A.G–99–540.

United States District Court, S.D. Texas, Galveston Division.

Nov. 3, 1999.

John Thomas Kirtley, III, McLain Law Firm, Houston, TX, for Anthony Duke, Sr., Carolyn Duke, plaintiffs.

William Kurt Henke, Henke Heaton and Bufkin, Clarksdale, MS, Steven Carl Windsor, Greer Herz & Adams, Galveston, TX, R Jefferson Allen, Henke–Bufkin, Clarksdale, MS, for Crop Growers Insurance, Inc, Fireman's Fund Agribusiness, Inc, defendants.

Samuel G Longoria, U.S. Attorneys Office, Houston, TX, for Federal Crop Insurance Corporation.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs bring this case seeking *de novo* review of an arbitration award issued in favor of Defendants Crop Growers Insurance, Inc. ("Crop Growers") and Fireman's Fund AgriBusiness, Inc. ("Fireman's Fund"). Now before the Court is Defendant's Motion to Dismiss filed October 4, 1999, which the Court evaluates as a Motion for Summary Judgment because both parties have submitted evidence outside

the pleadings. For the reasons stated below, Defendant's Motion is **GRANTED.**

## I.  FACTUAL SUMMARY

On May 31, 1998 Defendant Crop Growers issued Plaintiffs an insurance policy for their 1998 rice crop that was guaranteed by the United States Department of Agriculture's Federal Crop Insurance Corporation ("FCIC"), pursuant to the coverage requirements of the Multiple Peril Crop Insurance ("MPCI") program.[1] The contract contained an agreement to arbitrate all disputes between the parties arising out of the insurance contract. Specifically, the policy provided: "If you and we fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association." *Pls.' Original Compl.Ex. A at 10.*

On October 1, 1998, Plaintiffs filed a claim on one hundred fifty three acres of rice, and shortly thereafter an adjuster from Defendant Crop Growers inspected the rice crop at issue. Determining that Plaintiffs had failed to properly irrigate the rice crop, the adjuster concluded that no indemnity was properly payable under the policy. After being notified of the denial of their claim, Plaintiffs requested the matter be submitted to arbitration with the American Arbitration Association ("AAA"), as provided in the insurance contract. The AAA appointed an arbitrator to resolve the objections. An attorney for Plaintiffs represented them at arbitration, and the arbitrator conducted a full hearing, allowing each party to present witnesses and to introduce evidence. On August 4, 1999, the arbitrator issued a written decision in favor of Defendant Crop Growers. The arbitrator determined that "[t]he burden of proof was not met by [Plaintiffs] to establish a "reasonable expectation" [of receiving an ade-

quate amount of water for the destroyed crops] and adequate facilities were not available at the time of planting" as required by the insurance policy. *Defs.' Mem.Br. in Supp. of Mot. to Dismiss, Ex. B at 3.* Dissatisfied with the outcome of the prior arbitration, Plaintiffs now file suit in this Court seeking *de novo* review of the arbitrator's decision.

## II.  ANALYSIS

### A.  *Standard of Review*

 The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted. *See* FED. R.CIV.P. 12(b)(6). However, when considering a motion to dismiss, the Court has the discretion to decide whether it will accept materials outside the pleadings. *See Skyberg v. United Food and Commercial Workers Int'l Union,* 5 F.3d 297, 302 (8th Cir.1993). Matters outside the pleadings include written or oral evidence substantiating, not reiterating, the contents of the pleadings. *See* FED.R.CIV.P. 12(b)(6). If the Court accepts outside information, it must convert the motion to dismiss to one for summary judgment. *See* FED.R.CIV.P. 12(b)(6); *Burns v. Harris County Bail Bond Bd.,* 139 F.3d 513, 517 (5th Cir.1998). Upon conversion, the Court applies the standard for summary judgment. *See Flores v. Sullivan,* 945 F.2d 109, 110 n. 3 (5th Cir.1991). Because both parties submit evidence outside the pleadings, Defendants' Motion is treated as one for summary judgment.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265

---

1. Subsequent to the issuance of this insurance policy, Defendant Fireman's Fund purchased the assets of Defendant Crop Growers. Because Defendant Crop Growers sold the insurance policy to Plaintiffs, the Court will refer to the these two Defendants jointly as "Crop Growers."

(1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire and Cas. Co.*, 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED. R.CIV.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct.

at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting FED.R.CIV.P. 56(e)).

## B. *Evaluating Plaintiffs' Claim to Disallow the Arbitration Award*

Plaintiffs reason that because the AAA rules do not mandate that an arbitration is final, binding, or non-appealable, they should be permitted to file suit on the insurance policy, the arbitrator's findings notwithstanding. Plaintiffs further argue that the policy calls for nonbinding arbitration based on a separate right-to-sue provision included in the contract that states: "[Plaintiffs] may not bring legal action against [Defendants] unless [Plaintiffs] have complied with all the policy provisions." *Pls.' Original Compl.Ex. A at 11.* Asserting that they have complied with all policy provisions, Plaintiffs conclude that the insurance policy does not prevent parties from instigating litigation even if an arbitration award has been rendered.

■ The Court, however, finds Plaintiffs' request for *de novo* review of the arbitrator's ruling unavailing for a number of reasons. First, and most importantly, several appellate courts—including the Fifth Circuit—have held that an arbitration proceeding conducted in accordance with AAA rules constitutes binding arbitration, because AAA Rule 47(c) states that " '[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.'" *See McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 983 (5th Cir.1995); *Rainwater v. National Home Ins. Co.*, 944 F.2d 190, 194 (4th Cir.1991); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272–73 (7th Cir.1976); *Varley v. Tarrytown Assocs.*,

*Inc.,* 477 F.2d 208, 210 (2d Cir.1973) (all quoting AMERICAN ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES R. 47(c)) (all holding that arbitration conducted in accordance with AAA rules will be deemed both binding and subject to entry of judgment unless the parties expressly agree otherwise). Consequently, when "an arbitration clause refers to AAA Rules a presumption arises that such arbitration was intended to be binding." *St. Lawrence Explosives Corp. v. Worthy Bros. Pipeline Corp.,* 916 F.Supp. 187, 190 (N.D.N.Y. 1996).

In the insurance policy at issue in this case, the arbitration clause mandates that AAA procedural rules, including AAA Rule 47(c),[2] govern the resolution of any arbitration claim. The Court also notes that the insurance policy itself contains no express agreement indicating that the AAA rules should be considered nonbinding. Because AAA Rule 47(c) is invoked by the crop insurance policy, the Fifth Circuit's *McKee* standard applies. *See McKee,* 45 F.3d at 983–84 (interpreting an AAA-governed arbitration clause as creating a presumption of binding arbitration). In the absence of language in the policy limiting the effect of Rule 47(c), the Court holds that Plaintiffs' resort to arbitration makes the arbitrator's award binding.

■ The second reason supporting the Court's denial of Plaintiffs' claim for *de novo* review stems from Plaintiffs' misinterpretation of the right-to-sue language included in the insurance policy. The Fifth Circuit has previously discussed the binding effect of arbitration when the underlying policy or contract authorizing arbitration also includes language specifically requiring parties to arbitrate prior to pursuing litigation:

"Though [Plaintiffs] claim has some surface appeal, we think that the 'condition precedent' language cannot carry all the weight [Plaintiffs] would ascribe to it. Traditionally, federal courts were hostile

to arbitration clauses since it was thought they could be avoided at the whim of either party. As a result, parties frequently included 'condition precedent' language to make certain that the arbitration process ran its course before a federal court could entertain a suit. Therefore, we read 'condition precedent' to some extent as an artifact left over from the days of hostility toward arbitration. To the extent that the phrase has meaning, we find that it does not undermine the binding nature of arbitration, but instead applies to the confirmation process permitted by 9 U.S.C. § 9, or to other litigation in which the arbitration award would be final but just a sub-text in some larger litigation context."

*McKee,* 45 F.3d at 984 (quoting *Rainwater,* 944 F.2d at 194) (citations omitted). In this case, the crop insurance policy does not contain specific condition precedent language; rather the policy includes an arbitration clause as well as a separate right-to-sue provision. But regardless of the placement of the litigation language, the Court nevertheless finds the *McKee* analysis applicable in that the separate right-to-sue language "does not undermine the binding nature of arbitration."

To demonstrate this point more fully, the Court turns to Plaintiffs argument. Presumably, Plaintiffs believe the right-to-sue clause serves a function mutually exclusive from the arbitration clause. But such a reading would lead to absurd results for it would render the arbitration clause absolutely worthless. Instead, the Court reads the litigation clause simply as a consent to a judicial confirmation of the arbitrator's award. *See Place St. Charles v. J.A. Jones Constr. Co.,* 823 F.2d 120, 124 (5th Cir.1987) (noting that judicial involvement represents the only means for making arbitration awards final and binding). Therefore, .the Court does not interpret

---

**2.** Plaintiffs supplied the Court with a copy of the AAA rules governing this insurance policy.

Rule 47(c) is included therein. *See Pls.' Resp. to Defs.' Mot. to Dismiss Ex. A, at 22.*

the right-the-sue clause as specifying non-binding arbitration—thus the *McKee* presumption stands. This conclusion serves practical purposes, for the Court refuses to characterize the right-to-sue provision as authorizing Plaintiffs to take a second whack at recovery.[3] Consequently, the Court holds that the reference to AAA Rules in this insurance policy creates a binding arbitration requirement—even though the insurance policy includes a separate right-to-sue notice.

■ The final reason for granting summary judgment for Defendants is grounded in public policy considerations. Simply put, Plaintiffs' argument flies in the face of public policy and goes against the great weight of case authority—from the Supreme Court all the way down to this humble Court—strongly favoring arbitration. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *McKee*, 45 F.3d at 984–85; *Local 1351, Int'l Longshoremen's Ass'n v. Sea–Land Serv.*, 991 F.Supp. 825, 828 (S.D.Tex.1998) (all recognizing a liberal federal policy favoring arbitration). Here, the Court notes that Plaintiffs were keenly aware their insurance policy contained an arbitration clause, and that they expressed their consent to it by actually pursuing a remedy through arbitration.[4] Given Plaintiffs' initial determination to invoke the benefits of an arbitration proceeding, the Court finds it rea-

sonable to bind them to the arbitrator's decision, particularly because Plaintiffs must have known that arbitration awards rarely end in ties. The evidence shows that Plaintiffs were not duped into entering the arbitration process, and, in light of Fifth Circuit precedent, the Court finds that Plaintiffs are bound by the terms of the arbitration award at issue in this case.

■ The only grounds, therefore, for setting aside the arbitrator's decision would be if the arbitrator were guilty of misconduct, partiality, corruption, or if the arbitrator demonstrated an absolute disregard for the law. *See* 9 U.S.C. § 9 (1994). Plaintiffs, however, have levied no such allegations and therefore allowing *de novo* review of the award by this Court would be improper. To the contrary, the limited amount of evidence submitted to the Court regarding the arbitration hearing suggests that the arbitrator conducted a thorough hearing prior to rendering a decision. Plaintiffs were represented by counsel and had an opportunity to present witnesses, introduce evidence, and cross-examine Defendants' witnesses. It appears then that Plaintiffs participated fully in the arbitration in support of their claims against Defendants. At the conclusion of the proceeding, the arbitrator issued a two-page award explaining the basis for his decision. It appears, therefore, that the gravamen of Plaintiffs' complaint grows out of the fact that they are simply upset with the outcome of the arbitration proceeding, and it appears Plaintiffs have instigated this action in hopes of taking another bite at the

3. Plaintiffs seem to argue that because Defendants never filed for judgment on the arbitration award, the arbitration clause is somehow rendered moot. *See Pls.' Resp. to Defs.' Mot. to Dismiss at 2* ("[N]one of the conditions or suggestions made by the American Arbitration Association, to trigger the finality or binding effect of the arbitration decision, was ever implemented either [sic] party to the suit."). Plaintiffs' reliance on this line of reasoning is without merit. The binding effect of the arbitration clause does not turn on whether Defendants have enforced the award; rather, the

arbitration award becomes final once the arbitrator releases his findings. This reasoning is proper given the parties' reliance on AAA procedural rules and the absence of language in the policy indicating that the arbitration clause was nonbinding.

4. The Court has little doubt that if the shoe were on the other foot and Plaintiffs had prevailed in receiving an award from the arbitrator, Plaintiffs would be in agreement with this Court's decision.

apple.[5] This, however, is not a proper reason for appealing the decision of the arbitrator. As a result, the Court resists treating the arbitrator's decision in this case in a manner that might frustrate the very purpose for having an arbitration clause—to advance the swift, fair, and final settlement of a dispute between parties to a contract. Without more, the Court finds that the dispute was conclusively resolved in the prior arbitration.

### III. CONCLUSION

In the absence of any legitimate allegation or evidence suggesting improper conduct on the part of the arbitrator, the Court finds no reason to disturb the outcome of this particular arbitration process. Consequently, Defendants Motion to Dismiss, which this Court has evaluated as a Motion for Summary Judgment, is **GRANTED** and all of Plaintiffs' claims asserted against all Defendants in this action are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs, attorneys' fees, and expenses incurred to date. The parties are further **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course. **IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order entered this date, Defendant's Motion to Dismiss, which the Court has properly evaluated as a Motion for Summary Judgment, is hereby **GRANTED** and

Judgment is entered for Defendant. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

---

5. While not filing a motion to vacate the arbitration award, Plaintiffs point to a number of perceived errors committed by the arbitrator. Even if Plaintiffs had moved to vacate, the Court could not in good conscience find appropriate grounds that would prevent it from confirming, if necessary, the arbitrator's final award.